Robert L. Emery

TRCI  #13650508

82911 Beach Access Rd

Umatilla, OR. 97882

Pro Se

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **Robert L. Emery** | Case #    <u>2:25-cv-01340-MC</u> |
| **Plaintiff** | 1983 Complaint; 42 U.S.C. 12101 et seq. |
| | Americans with Disabilities Act; 29 U.S.C |
| v. | 794, section 504 of the Rehabilitation Act |
| | of 1973; First Amendment Retaliation- |
| **Oregon Department of Corrections,** (ODOC) | Free Speech; Fourteenth Amendment, |
| An entity of the State of Oregon; **Kacey Thompson,** | Equal Protection. |
| Americans with Disabilities (ADA) Coordinator for Two | |
| Rivers Correctional Institution (TRCI); **Marcia Ventura,** | |
| Statewide ADA Coordinator; **T. Harn,** East Law Librarian; | **VERIFIED COMPLAINT** |
| **Mr. Howser,** Law Librarian; **John and Jane Doe's,** ODOC | **DEMAND FOR JURY TRIAL** |
| Employees. | _____ |
| **Defendants** | |

Defendants are sued in their official and individual capacities.

# 1.

## INTRODUCTION

This is an action for Injunctive relief for the on-going violations of plaintiff's rights. Plaintiff is seeking Damages, including compensatory, and punitive, equitable relief, attorney's fees, and costs, to redress violations of the ADA 42 U.S.C. 12101 et seq. ; 29 U.S.C. 794, Section 504 of the Rehabilitation Act of 1973; and violations of the First (1st) Free Speech-Retaliation; and Fourteenth (14th) Equal Protection amendments of the United States Constitution, challenging the denial of access to programs, services, and activities that are provided to similarly situated inmates based upon disability discrimination. Plaintiff an inmate diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) (which is intentionally left untreated by ODOC), Major Depression, and Suicidal Ideation, brings this action against The State of Oregon, ODOC, K. Thompson, and M. Ventura, T. Harn, Mr. Howser, and Doe defendants for Discrimination due to Disability, Retaliation, and equal protection. This lawsuit is based on the willful and deliberate refusal of the defendants ODOC, Thompson, and Ventura, Harn, Howser, Doe's to comply with Federal and State laws protecting the rights of plaintiff who is disabled, and in the custody of the defendants. Plaintiff has exhausted all available remedies and has no adequate remedy to redress these issues. Through their practices and policies defendants ODOC, Thompson and Ventura, Harn, Howser, Doe's discriminate against individuals with disabilities in their custody. Plaintiff is qualified to participate in the offered programs, services, activities with reasonable accommodations, and or modifications that would not fundamentally alter the nature of the programs or impose undue burden on ODOC.

# 2.

## JURISDICTION & VENUE

This Court has subject matter jurisdiction under 28 U.S.C. 1331 (Federal Question).

Venue is proper in this Judicial District pursuant to 28 U.S.C. 1391 (b), because the claim(s) or a substantial part of the events giving rise to the claims herein occurred or arose in this Judicial District.

# 3.

## PARTIES

Plaintiff Robert L. Emery, is a citizen of the United States of America. At the time of filing of this action, Plaintiff has standing as he is in custody of ODOC at TRCI. At all times relevant, Plaintiff has been a resident of Umatilla County, Oregon, and an adult in custody (AIC) at TRCI.

**4.**

The individually named Defendants ODOC, Thompson and Ventura, Harn and Howser and Doe defendants were employees and or agents of the State of Oregon at all times relevant to this complaint. At all times relevant herein each Defendant acted under color of state law, and within the scope of their employment. Defendants ODOC, Thompson and Ventura, Harn, Howser, Doe Defendants, are sued in their official and individual capacities. All Doe defendants will be named in an amended complaint once their identities become known during discovery.

**5.**

Defendant ODOC is an agency of the State of Oregon and operates all prisons in Oregon including TRCI.

**6.**

TRCI and ODOC receive federal funding.

**7.**

**STATEMENT OF THE FACTS**

Plaintiff is diagnosed by O.D.O.C. Behavioral Health Services (BHS) with Attention Deficit Hyperactivity Disorder (ADHD), Anxiety, Major Depression, and Suicide Ideation. Plaintiffs ADHD substantially limits his major life activities including his ability to read, write, comprehend, learn, concentrate, think, communicate, in conditions such as exist within TRCIs law library i.e. cramped, loud, noisy, busy confines. ODOC refuses to treat plaintiffs ADHD with appropriate medications, saying that "drugs like Ritalin, Adderall, Wellbutrin (all of which have been used in the past to successfully treat plaintiffs ADHD) are not approved in the ODOC formulary") Instead plaintiff has been prescribed Benzodiazepines (Ativan) for the past 3-4 years to treat his mental health conditions.

**8.**

Approximately 25 years ago TRCI was designed and built as a Supermax prison, with "satellite law libraries" on all 16 units within the facility, each unit houses approximately 102 inmates at any given time, each unit contained two quiet rooms, wherein a single AIC was allowed at a time, and 1 main law library which was located in the main corridor. All legal research, and preparation, including law books, typing, FastCase, Westlaw, and Sheppardizing, were conducted within the "satellite law libraries" which contained a computer and typewriter, once an AIC completed the legal documents that they were working on, they were then taken to the "main law library" for copying, mailing, etc. The intent of this

design was to keep inmates separated and thus prevent fights, etc. The Supermax status was never instituted, and TRCI became another medium-maximum prison within ODOC.

**9.**

Approximately 6-7 years ago TRCI removed all of the "satellite law libraries" (except for unit 4 AHU) and combined them all into two law libraries, [East and West sides]. These two law libraries are approximately 10 feet wide by 30 feet long, and resemble a medium size hallway in an average size home, each contains 10 computer workstations, two legal aide stations, and the law librarian station in an open area. The AIC's using the workstations are packed so closely together that they are forced to literally rub legs and arms together as they (we) attempt to work. Furthermore, the law library is always loud, noisy, busy, and cramped. These conditions exacerbate plaintiffs untreated ADHD, and substantially limits his major life activities including his ability to process information, including but not limited to reading, writing, concentrating, thinking, comprehending, learning, this in turn prevents plaintiff from conducting any legal research such as researching legal books, Sheparlizing cases, etc. on the computers which contain within them the law books, forms, formats, Fastcase, Westlaw, Barbooks, etc. and denies him access to the courts.   Unlike similarly situated AIC's with no disabilities  plaintiff is forced to handwrite his legal document(s) in his cell at night when its quiet, and then take these document(s) to the law library and type them into a computer, he then photocopies the document(s) and takes them back to his cell, edits and corrects them, repeating this process over and over multitudes of times until he has perfected the document(s) as best he can, incurring excessive copying fees along the way which are not imposed upon similarly situated AIC's who do not have disabilities.

**10.**

When this first occurred around 2016, plaintiff filed numerous complaints about this interference with his access to the courts, including a complaint to Disability Rights Oregon (DRO), the Protection and Advocacy Organization for Individuals with Mental Illnesses (PAMII) in Oregon, authorized by the Federal Government to conduct investigations into abuses of mentally ill persons, who then mediated ADA accommodations with the then ADA coordinator Linda Simon, and BHS manager Ms. San Juanita Rosalas, which included Wednesday's afternoons alone in the main law library, permission for the Legal Aides to write his complaints, grievances, etc. and a NEO Alpha smart word processor for plaintiff to type legal Documents in his cell at night when it was quiet.

**11.**

Several years ago, Defendant Thompson replaced L. Simon as the ADA coordinator at TRCI, and shortly thereafter defendants Thompson, Ventura, and ODOC revoked plaintiffs ADA accommodations for Wednesday's alone time, and his legal aid help. In any event plaintiffs ADA accommodation allowing "legal aides" to write his complaints for him was a farce to begin with, as these so called "legal aides" are legal aides in name only. They are not properly trained, nor educated, and are incompetent as far as civil rights litigation is concerned as evidence by there inability to write a proper, Amended Complaint in plaintiffs' previous case Emery v. Gitness et al. U.S.D.C. # 2;23-cv-01958-MC for non-frivolous civil rights violations i.e. Due Process 14th amendment; First amendment free speech and Retaliation; Eighth

amendments, wherein this Court Ordered plaintiff to Amend his Complaint during initial screening or face dismissal with prejudice of the Complaint. Plaintiff could not, [and still does not] understand what exactly this Court was asking of him, because plaintiff believed then, as he still does now, that he had properly written the Complaint in the first place. But in an abundance of caution plaintiff went to the two main "legal aides" and allowed them [against his better judgement] to Amend the Complaint for him which resulted in this Court dismissing the Complaint with prejudice, thus suffering an actual injury, i.e. the dismissal of my non-frivolous complaint due to deprivation of law library research materials, and access to competent legal aides. Plaintiff had a second non-frivolous complaint for 8th amendment violations case Emery v. ODOC et al. U.S.D.C. # 2;22-cv-01977-MC denied, along with his Motion for Preliminary Injunction, along with multiple other Motions throughout his cases.

**12.**

On or about 4-24-22 plaintiff had begun sending a series of kytes, and ADA accommodation requests seeking to have the satellite law library placed back on the Mental Health Unit (MHU) and update the NEO Alpha smart word processor (NEO) due to its being antiquated and deleting whole words, sentences, paragraphs, on its own accord, and its inability to format legal documents. Plaintiff was repeatedly denied these ADA accommodations, and ODOC refused to make any reasonable modifications to the East and West libraries to accommodate Plaintiffs special needs. So, Plaintiff began filing a series of Discrimination complaints and Grievances along with ADA accommodation requests, all of which were denied.

**13.**

On or about 8-26-24 plaintiff was called to Security Operations wherein he was confronted by Defendants Thompson, Ventura, and a Sgt. Olivera in what he perceived as a threatening manner, Thompson told plaintiff that "she was revoking the ADA accommodation for the NEO because plaintiff has no disabilities that warranted it". Defendant Thompson then handed plaintiff an ODOC Memo detailing this revocation. From the tone and mannerisms of Thompson, Ventura, and Sgt. Olivera, it was obvious to plaintiff that all three staff were waiting for plaintiff to say _anything_ objectionable, or even hint at a lawsuit as they were going to use this moment as a pretext to send plaintiff to DSU for some trumped up charge. (this is a common practice at TRCI to deal with inmates seen as problems, or litigious. Wherein even mentioning a lawsuit or Grievance can get you sent to the hole and written a Major Disciplinary Report for Extortion). Recognizing the situation plaintiff instead nervously laughed and asked if "he could keep the copy of the memo" to which defendant Thompson replied "yes", plaintiff then promptly left the room.

**14.**

On 11-8-24 Plaintiff filed a Discrimination complaint against Defendants Thompson and Ventura for disability discrimination due to their denying plaintiff equal access to the law library in case number

TRCI-2024-08-148. On 9-25-24 the grievance coordinator refused to process this complaint for non-compliance with the Rules.

### 15.

On 9-30-24 plaintiff filed an appeal to this denial arguing that the grievance coordinator was intentionally misquoting the Rules to subvert the complaint process to protect Thompson and Ventura. (this is a custom/policy used by TRCI against AIC's to limit complaints).

### 16.

This appeal was denied on 10-22-24, and plaintiff filed the second and final appeal on 10-22-24 citing retaliation and censorship as the reasons for the denials. This was denied on 11-15-24.

### 17.

On or about 11-12-24 plaintiff filed a Grievance TRCI-2024-11-075 for disability discrimination, Retaliation, and HIPPA violations against defendants Thompson, Ventura, and ODOC. On 4-22-25 the second and final appeal to this grievance was denied.

### 18.

On or about April 2025 plaintiff again contacted DRO again seeking their help to mediate this retaliation, and disability discrimination. On 5-5-2025 plaintiff received a letter from DRO acknowledging their "awareness of reasons to believe that plaintiffs advocacy on his behalf, and other inmates has led to retaliation in a number of forms" and "abuse of the ADA system by coordinators, and Ms. Ventura" **[SEE ATTACHED EXHIBIT 1].**

### 19.

AIC Kenneth Peeler, an inmate Law Clerk in TRCI's East Law Library submitted a sworn Declaration in support of plaintiffs claims in this complaint **[SEE ATTACHED EXHIBIT 2].**

### 20.

On 3-18-25 at 800 am upon entering the TRCI East Law library plaintiff was handed a document to sign. Plaintiff was told that "an audit had been conducted on his legal flash drive" (which contains plaintiffs legal work product) and that "it had been inspected" outside his presence.

### 21.

Legal Flash drives are stored in a restricted access section of the East law library.

### 22.

Plaintiff objected to this "inspection" as it had occurred outside plaintiff's presence, and he was told that it had happened multiple times in the past, and that he (plaintiff) had signed these release forms then.

But this was always signed under threat and duress but simply didn't know how to deal with it until recently.

**23.**

Plaintiff was forced to sign this release document allowing ODOC staff to open and "inspect" i.e. read his legal work product outside his presence or face being denied use of that Flash Drive which would further deny plaintiff access to the courts. Plaintiff after signing this release document added the statement "made under duress" below his signature to make clear that he was only signing this under pressure and threat.

**24.**

Although a Flash Drive is not per se "legal mail" it is *"within the spirit of the law"* protected legal documents and a violation of ODOC's policy and practice to always inspect things deemed "legal" in the presence of the AIC.

**25.**

Defendants Harn, Howser and Doe's are following their own illegal/unconstitutional custom/policy of "auditing" (reading) plaintiffs legal work product in and outside of his presence.

**26.**

Plaintiff filed a Grievance TRCI-2025-03-1336 and two subsequent appeals alleging that Harn, Howser, and Doe's are opening and reading plaintiffs legal documents inside and outside of my presence in violation of clearly established law.

**27.**

The Grievance coordinator Ms. Eynon refused to process plaintiff's grievance stating that "you already have the maximum number of grievances permitted at one time" i.e. four (4) thus exhausting plaintiffs administrative remedies.

**28.**

In a discussion with defendant Harn addressing this issue plaintiff was told "we are not reading your legal documents, but are scanning them for letters to attorneys and doing cursory reviews".

**29.**

Upon information and belief defendants Harn, Howser, and Doe's are working in concert to hinder, stymie, thwart, interfere with plaintiffs' legal strategies so that they can obtain an edge in litigation, and or share such information with their counsel **[SEE ATTACHED EXHIBIT 3].**

**30.**

Plaintiff is a well-known jailhouse lawyer with several non-frivolous civil rights lawsuits pending against ODOC. Defendants Harn, Howser, routinely read plaintiffs legal documents that are handed to them for copying, or downloaded from his Flash Drive for E-Filing and ignore all protestations saying "they are

only giving them a cursory review" as I stand there watching them <u>read</u> them. Plaintiff as well as any attorney can glean "a lot" of information from conducting "cursory reviews of documents"!

## FIRST CLAIM FOR RELIEF

## AMERICANS WITH DISABILITIES ACT-42 U.S.C. 12101 et seq.

### (AGAINST ODOC)

Plaintiff re-alleges all prior paragraphs 1-thru 30, as though fully set forth herein.

Under Title II of the ADA, a public entity may not deny qualified individuals with disabilities participation in, or the benefits of the services, programs, activities of that entity.

Defendant ODOC is a public entity under 42 U.S.C. 12131 (1)(B).

Plaintiff is diagnosed by ODOC/ Behavioral Health Services (BHS) with ADHD, Anxiety, Major Depression, and Suicide Ideation.

Defendants refuse to treat plaintiffs ADHD with appropriate medications such as Wellbutrin, Adderall, Ritalin or any other such medications which are known to treat ADHD, stating that "these medications are banned from ODOC's formulary". Instead defendants "treat" plaintiff's mental health conditions with Benzodiazepines (Ativan) for the past 3-4 years which are <u>not</u> supposed to be prescribed for ADHD.

These untreated disabilities interfere with plaintiffs Major Life Activities, including his ability to read, comprehend, learn, speak, concentrate, and write/type, communicate, and speak within the conditions such as exist, within TRCI's law libraries, i.e. loud, noisy, busy, cramped conditions.

Plaintiff is a "qualified individual with disabilities" At all times relevant herein Defendants were aware of plaintiff's disabilities and denied plaintiff access to legal library research materials, law books, the ability to Shepardize cases, forms, formats etc. solely because of his untreated disability.

Defendants have damaged plaintiff in violation of 42 U.S.C. 12132 and its accompanying regulations by committing discriminatory acts and practices with deliberate indifference.

Defendants subjected plaintiff to on-going discrimination on the basis of his disabilities and were deliberately indifferent to the need to accommodate plaintiffs' disabilities. Said discrimination effectively deprived plaintiff of the benefits, services, activities, offered by ODOC to similarly situated inmates, including access to the law library, the ability to Shepardize cases (which is critical to any legal case), legal research materials, legal books, legal forms, access to the courts, access to a NEO or SECUREWORD laptop.

ODOCs failure to provide reasonable accommodations and denial of program access to plaintiff violates Title II of the ADA.

Defendants harmed plaintiff by failing to accommodate his special needs, or to make reasonable modifications to the law library, and acted with deliberate indifference to plaintiffs' rights, and thus plaintiff is entitled to money damages.

Plaintiff is entitled to Injunctive relief, including but not limited to, an Order prohibiting defendants from discriminating against plaintiff, and other persons with disabilities, and an Order mandating full compliance with Title II of the ADA. Plaintiff is entitled to a Declaration that the Defendants violated Title II of the ADA.

As a direct and proximate result of this unlawful conduct plaintiff has suffered, and continues to suffer harm, including the loss of program, services, and activities benefits, emotional distress, and economic harm, including but not limited to the loss of several non-frivolous civil rights lawsuits due to inability to properly respond and or cite relevant, updated caselaw, and the loss of approximately two thousand dollars in filing fees.

Pursuant to 42 U.S.C. 1988 and 2000 e-5 Plaintiff is entitled to an award of attorney's fees, expert witness fee's, and cost's incurred.

## SECOND CLAIM FOR RELIEF

### (29 U.S.C. 794, SECTION 504 OF THE REHABILITATION ACT OF 1973)

### (AGAINST ODOC)

Plaintiff re-alleges and reincorporates each and every allegation contained on paragraphs 1 thru 30, as though fully set forth herein.

Plaintiff is a qualified individual with a disability, or handicap under the Rehabilitation Act.

Plaintiff is otherwise qualified to receive the benefit of the programs, services, activities, made available to other inmates within ODOC.

At all times material, Defendants ODOC was and is a recipient of Federal Financial Assistance for its programs, services, and activities.

Defendants ODOC's on-going actions and omissions as described above violated plaintiffs' rights under the Rehabilitation Act by excluding him, or denying him the benefits, of the defendants' services, programs because of his disability. This exclusion has limited my ability to participate in and benefit from programs, services, activities that similarly situated non-disabled inmates can access, resulting in emotional distress, economic harm and a sense of exclusion from the law library, access to the courts. Loss of several non-frivolous lawsuits due to inability to properly respond, or cite relevant, up to date, caselaw.

Defendant ODOC's on-going conduct showed deliberate indifference to plaintiff's rights, Plaintiff sustained emotional distress, and damages due to defendant's violation of the Rehabilitation Act, including loss of access to legal research materials, legal Books, Legal forms, access to the courts, which in turn led to the loss of his non frivolous lawsuits in the U.S.D.C. Emery v. ODOC et al. U.S.D.C. #2;22-cv-01977-MC, and Emery v. Gitness et al. U.S.D.C. # 2;23-cv-01958-MC,  along with most all of his Motions filed in those cases, and approximately two-thousand (2000.00) in filing fees.

Plaintiff is entitled to Injunctive relief, including, but not limited to, an Order prohibiting Defendants from discriminating against plaintiff, and other persons with disabilities, and an Order mandating full complacence with Section 504 of the Rehabilitation Act.

Pursuant to 505 of the Rehabilitation Act, plaintiff is entitled to money damages, and an award of attorney fees and costs.

## THIRD CLAIM FOR RELIEF

## (42 U.S.C. 1983 FOURTEENTH AMENDMENT- EQUAL PROTECTION)

## (AGAINST DEFENDANTS THOMPSON AND VENTURA)

Plaintiff re-alleges and reincorporates each and every allegation contained in paragraphs 1 thru 30, as though fully set forth herein.

The Fourteenth Amendments Equal Protection Clause of the United States Constitution Prohibits defendants from depriving Service, Activities, (based upon his disability) that are provided to similarly situated inmates.

Defendants Thompson and Ventura refuse to make reasonable accommodations for plaintiffs diagnosed disabilities by excluding plaintiff from services, activities, programs provided by ODOC, this exclusion has limited plaintiffs ability to participate in, and benefit from programs that similarly situated non-disabled inmates can access, resulting in emotional distress and a sense of exclusion from the law libraries research and legal materials, including but not limited to legal books, forms, formats, Fastcase, Westlaw citations, and BarBooks.

Defendants Thompson and Ventura's actions have been intentional, deliberate, and embarked upon with knowledge of, or in conscious disregard of, the harm that would be inflicted upon the plaintiff. These actions caused direct harm to plaintiff. As a result of this intentional conduct, plaintiff is entitled to punitive damages against Thompson and Ventura in their individual capacities in an amount sufficient to punish them and to deter others from similar conduct.

Defendants violated rights held by plaintiff which were clearly established and no reasonable official similarly situated to defendants could have believed that his or her conduct was lawful or within the bounds of reasonable discretion. Defendants thus lack qualified or statutory immunity from suit or liability.

As a direct and proximate result of the on-going actions described herein, plaintiff sustained actual damages including access to legal books, Fast case, Westlaw, and BarBooks, Legal forms, and formats, and access to the courts. Loss of several non-frivolous civil rights lawsuits, due to inability to properly respond and or cite relevant, up to date caselaw, loss of approximately $2000.00 (two thousand dollars) in filing fees.

As a result of the above, plaintiff is entitled to an award of compensatory damages against defendants Thompson and Ventura in an amount to be determined according to proof at trial.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. 1983- FIRST AMENDMENT

### (DEPRIVATION OF FEDERAL CIVIL RIGHTS, INTERFERENCE WITH FIRST AMENDMENT PROTECTED SPEECH AND RETALIATION)

### (Against Thompson, Ventura, Harn, Howser, and Doe's)

Plaintiff re-alleges and reincorporates each and every allegation contained in paragraphs 1 thru 30, as though fully set forth herein.

This unconstitutional custom/policy of Harn, Howser, Doe's reading plaintiffs' legal documents outside his presence violates plaintiffs right to free speech and to be free from retaliation and lacks any legitimate penological justification. These actions have chilled plaintiffs' rights in an arbitrary and capricious way. *The 9th Cir In Michael T. Hayes v. IDAHO CORRECTIONAL CENTER 849 F.3d 1204 stated that "prisoners communications with civil attorneys (or legal flash drives in plaintiffs' instant case) often relate to lawsuits challenging the conditions of confinement in the prison or wrongful conduct of prison employees. When prison officials open legal mail, prisoners may justifiably be concerned about retaliation from the very officers the prisoner has accused of wrongdoing. Prisoners may also worry that the contents of the letters could be passed along to the facilities lawyers, who would learn of the prisoner's legal strategy. See Gomez v. Vernon 255 F.3d 1118, 1123-24 (9th Cir. 2001).*

Defendants Thompson and Ventura, Harn, Howser, and Doe's actions in retaliating against plaintiff due to his complaints and advocacy work were undertaken to hinder, and stymie plaintiffs' access to the courts, to interfere with his lawful advocacy efforts, subjecting plaintiff to illegal revocation of his ADA accommodations, denying him access to the legal libraries resources for conducting legal research, wrongful removal of and denial of his personal property, reading his legal documents in and outside of his presence. These actions frightened plaintiff and chilled his right to speak freely about conditions of his confinement and other matters of public concern. These defendants knew or should have known that acting in concert and/or in a co-conspirator relationship to oppress, hinder, stymie, frustrate, impede, plaintiffs access to the courts for exercising constitutionally protected activity violates the Constitution's prohibition on retaliation due to free speech activities, access to the courts, petitioning the Government for Redress of Grievance, yet these defendants wantonly and willfully set out to injure

plaintiff under color of law to silence him through intimidation, retaliation, in violation of the First Amendment of the United States Constitution and Federal Law.

Defendants Thompson and Ventura, Harn Howser, and Doe's actions have been malicious, deliberate, intentional, and embarked upon with knowledge of, and or in conscious disregard of, the harm that would be inflicted upon plaintiff.

These actions caused direct harm to plaintiff. As a result of this intentional conduct plaintiff is entitled to punitive damages against defendants Thompson and Ventura in their individual capacities in an amount sufficient to punish them, and to deter others form similar conduct.

Defendants Thompson and Ventura, Harn, Howser, and Doe's violated rights held by plaintiff which were clearly established, and no reasonable official similarly situated could have believed his or her conduct was lawful, or within the bounds of reasonable discretion. Defendants thus lack qualified or statutory immunity from suit, or liability.

As a direct and proximate result of the actions described herein plaintiff sustained actual damages including diminution of his ability to file complaints, access to the law library, legal research materials, legal books, legal forms, legal formats, the ability to Shepardize cases, loss of monetary assets. Loss of non-frivolous civil rights lawsuits, Denial of multiple Motions, and Injunctions, reading of plaintiff's legal documents outside his presence, loss of monetary assets, mental anguish.

As a result of the above, plaintiff is entitled to an award of compensatory damages against defendants Thompson and Ventura, Harn, Howser, and Doe's in an amount to be determined according to proof at trial

**PRAYER FOR RELIEF**

Plaintiff prays for judgement against defendants as follows;

1. An award of damages in an amount to be proven at trial to compensate plaintiff for his mental and emotional injuries.
2. An award of punitive damages in an amount to be proven at trial.
3. Plaintiffs reasonable attorney's fees, costs, and disbursements, expenses.
4. For such relief as the law permits and justice requires.
5. For Injunctive relief ordering ODOC to mandate that reasonable accommodations will be provided to inmates with disabilities and modifications will be made as necessary to allow inmates with disabilities equal access to the law library and its resources, including SECUREWORD laptops.
6. Injunctive relief ordering ODOC staffing to undergo ADA and disability awareness training to prevent future discrimination against inmates with disabilities.
7. For declaratory relief statin that defendants violated Title II of the ADA. And the Rehabilitation Act of 1973
8. Compensatory damages for the economic and emotional harm suffered by plaintiff, i.e. filing fees to the 9th Circuit Court of Appeals, Costs, etc.
9. Injunctive relief Ordering defendants Harn, Howser, and Doe's to cease and desist "auditing" plaintiffs legal flash drive outside his presence, and stop reading his legal documents in and or outside his presence.

**I DECLARE UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. SECTION 1746 THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated 7-30-25

Robert L. Emery #13650508

Pro Se



Exhibit 1

May 2, 2025

CONFIDENTIAL LEGAL MAIL

Robert Emery
SID #13650508
TRCI
82911 Beach Access Road
Umatilla, OR 97882

Hi Robert,

I hope that you are managing and am writing to assure you that we have received your most recent letter following others in which you described your ongoing disputes regarding access to the law library and your entitlement to a new word processor to replace the Neo that you have been using for some years as an ADA accommodation. We have also received the extensive documentation that you sent to us describing the course of your dispute with ODOC about these and related issues.

Although I and the other DRO attorneys who are now more active than me on prison issues are well aware of reasons to believe that your advocacy on behalf of yourself and other inmates has led to retaliation in a number of forms, it is doubtful that we will be able to assist. If that changes, one of us will contact you.

Although that is undoubtedly not what you were hoping to hear, I can provide some potentially better news. Our more systemic work has recently put us in contact with two entities that may seek to speak with you.

The first of those is Falcon International, a firm that ODOC has contracted to investigate the quality of its system of medical care and make recommendations for needed changes. I have told them that you may be a good source of information about the shortcomings of that system and how those shortcomings are connected to many other problems such as retaliation in many forms including the extensive overuse of solitary and other discipline, a Kyte system that is designed to frustrate anyone who attempts to use it, and a process that bounces ADA requests back and forth between ADA building coordinators and Ms. Ventura.

We have also met with ODOC's new ombuds who seemed keen to hear about systemic problems that might be appropriate and useful for her to look at and I again suggested that you might be a good person for her to speak with.

We do not know whether Falcon or the new ombuds will follow through to contact you, but have told them that doing so might be helpful as a way to inform their professed desires to improve a system that has not done well by individuals with disabilities for at least as long as I have been at DRO.

In the event that you do not wish to be contacted by either of these entities, please let us know.

Sincerely,

_____ /s/ _____
Joel Greenberg

511 SW 10th Avenue, Suite 200 / Portland, OR 97205
Voice: 503-243-2081 or 1-800-452-1694 / Fax: 503-243-1738 / www.droregon.org
Disability Rights Oregon is the Protection and Advocacy System for Oregon



Robert L. Emery

TRCI  #13650508

82911 Beach Access Rd

Umatilla, OR. 97882

Pro Se


# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON


Robert L. Emery

Plaintiff

Case #

**DECLARATION UNDER PENALTY OF PERJURY**

**OF KENNETH PEELER**

v.


ODOC et al.

Defendants


I Kenneth Peeler, SID # __166406015__ am an AIC at TRCI, am over the age of 18, am competent to testify at trial, and have personal knowledge of the matters stated herein, I declare under penalty of perjury pursuant to 42 U.S.C. 1746 that;

1. I worked in the law library at TRCI for __9+__ years, and am very familiar with all things related to the law library.
2. I am very familiar with Plaintiff Robert L. Emery and the ADA accommodations that were afforded to him for the past 5-6 years including Access to the law library on Wednesdays by himself, Legal Aides to help him write complaints Etc. and a NEO Alpha smart word processor.
3. I am very familiar with the NEO word processor and have personally experienced it deleting words, paragraphs, and sentence without being prompted.

4. As part of my job description, I process incoming kytes, and have personally seen plaintiff Emery asking the legal librarian Ms. Harn and Mr. Howser for help in accommodating his special needs due to the conditions within the law library and was refused.

5. I can personally testify to the fact that the law library is a very tiny, cramped, loud, noisy, and busy are in which inmates are crammed into.

6. Plaintiff Emery has complained to me "many times" about the conditions within the law library triggering his disabilities and I have witnessed Plaintiff storming out of the law library in frustration after telling me that "he couldn't get any work done in here".

7. I have personally witnessed legal librarian Howser reading plaintiffs legal documents on the computer prior to giving them to plaintiff. One time he read plaintiffs documents so thoroughly that he stated to plaintiff that "you misspelled your address". This seemed to me to violate ODOC's Rules that staff would only conduct Cursory reviews of AIC's legal mail.

8. I personally witnessed plaintiffs ADA accommodations that he had been provided for many years being revoked for what seemed to me to be nothing more than retaliation for his advocacy efforts.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated May 13th, 2025

Kenneth Peeler # 16648615

TRCI

82911 Beach Access Rd

Umatilla, OR. 97882

Robert L. Emery

TRCI #13650508

82911 Beach Access Rd

Umatilla, OR. 97882

Pro Se



**Exhibit 3**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

Robert L. Emery

Case #

**DECLARATION UNDER PENALTY OF**

v.

**PERJURY OF ROBERT J. BYERS**

O.D.O.C. et al.

Defendants

I Robert J. Byers, am over the age of 18, am competent to testify at trial, and have personal knowledge of the matters stated herein.  I Declare under penalty of perjury Pursuant to 28 U.S.C. Section 1746 that;

1. I am an AIC at TRCI, and am a Legal Aide at the East side Law library.
2. I personally know and have worked with plaintiff Emery on multiple occasions, and am aware of his ADA disabilities i.e. ADHD and Anxiety as we have discussed it on many occasions and I have as legal aid read his medical files, and seen reports of it documented in other legal cases.
3. The TRCI law library computer work stations are very tiny and cramped spaces with virtually no room to effectively type and store personal protected legal work, they are loud and busy most all day, every day due to the confined space.

4. AIC's have no privacy at their work stations, allowing for private, confidential, privileged Criminal and Civil claims, and Medical issues to be exposed and laid bare for others to view and read.
5. AIC's actually touch each other, elbow to elbow and leg to leg, continuously creating and causing issues up to and including physical confrontations.
6. TRCI used to have Satellite law libraries in a secure room on every unit at TRCI that allowed AIC's to work on their cases privately, in a room that was quiet and had no distractions, in comparison East and West law libraries have a lot of distractions and movement through them all day long.
7. When the Satellite Housing Unit law libraries were closed 95% of all of the legal research materials were thrown away.
8. I have read correspondence that came from TRCI-ADA Coordinator K. Thompson informing Plaintiff Emery that his ADA NEO disability accommodations were being revoked and that she was confiscating it because she had determined that Emery had no disabilities that warranted it.
9. I have witnessed plaintiff Emery storm out of the law library on numerous occasions, and when I addressed this issue with Emery back on our housing unit he related to me that it was because he cannot concentrate with all of the movement and noise distracting him from his legal work.
10. I have personally witnessed disability discrimination by TRCI Physical Plant Manager Asst. Mr. Streter where he said "I don't give a fuck about ADA compliance or PREA" when an AIC asked him if he could possibly make the work stations wider for privacy so that we are not touching each other.
11. Ms. K. Thompson has been restricting AIC's through threats that they are not allowed to do any legal work on their SECUREBOOK, (an ADA accommodation laptop), I have personal knowledge of this as the legal aide in the law library to whom these AIC's complain to.
12. I have personally witnessed the legal librarians Harn and Howser "reading" AIC's legal documents as they were being processed, and am aware that they, along with Security officials have gone through AICs legal flash drives outside of their presence.
13. I am aware that Security officials have entered the law library during closed times and gone through AIC's stored legal boxes outside their presence.

Sworn to under penalty of perjury pursuant to 28 U.S.C. section 1746.

Dated 7/9/2025

Robert J. Byers #

TRCI

82911 Beach Access Rd

Umatilla, OR. 97882

# CERTIFICATE OF SERVICE

**CASE NAME:** Emery _____ v. ODOC et al _____

**CASE NUMBER:** (if known) _____

COMES NOW, _Robert L Emery_____, and certifies the following:

That I am incarcerated by the Oregon Department of Corrections at Two Rivers Correctional Institution. **(TRCI)**

That on the _7th_ day of _July_____, **2025,** I personally gave Two Rivers Correctional Institution's e-filing service a true copy OF THE FOLLOWING:

| | |
|---|---|
| **1.** | 1983 complaint — ADA |
| **2.** | Exhibits 1 thru 3 |
| **3.** | |
| **4.** | |
| **5.** | |
| **6.** | |
| **7.** | |
| **8.** | |
| **9.** | |
| **10.** | |
| **11.** | |
| **12.** | |
| **13.** | |
| **14.** | |
| **15.** | |

_____
(Signature)

Print Name: _Robert Emery_____

SID #: _13650508_____